## THE FLYING BY.

### THE EMPIRE.
#### No. 5140.

Circuit Court of Appeals, Third Circuit.
June 8, 1934.

Rehearing Denied June 30, 1934.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine and Henry P. Elliott, both of New York City, of counsel), for appellant.

Albert G. Goetz, of Detroit, Mich., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below the owner of the yacht Flying By filed a libel against the dredge Empire to recover damages sustained by the yacht by reason, as is alleged, of the misconduct of the dredge. It appears the latter was, under a contract with the government, dredging the channel of the Raritan river. The dredge was anchored on spuds, and the yacht was proceeding under power from Florida to New York. It is contended by the yacht that by reason of the dredge's conduct she was forced out of the channel and struck rocks, of which she had no knowledge or warning.

It is clear that there was no reason why this accident should have happened. It was broad daylight, a clear day, and both vessels were in sight of each other. It is also clear that to the south of the dredge and the scow fastened to it there was ample breadth and depth of channel for the yacht to pass, that the captain of the yacht was familiar with the locus in quo, and that a large house boat, which immediately followed the yacht, passed the dredge by this channel. It is likewise clear that the captain of the yacht also purposed passing on the south side of the dredge and scow, and shaped his course to do so, until the yacht was within some three hundred feet of the scow, when the yacht's course was changed and an effort made to pass on the north side of the dredge, with the consequent result of striking the rocks. He

attempts to justify his doing so by the fact that he blew his claxton horn, indicating his purpose to pass on the south side, but, when the dredge made no answering reply accepting his signals, he concluded the dredge wished him to pass on the north side. It will thus appear that his entire maneuver is based on the fact that the dredge heard the claxton horn signal. But not only is there no proof that the horn was heard by the operating dredge, but, assuming a reply was due from the dredge and no reply was made, it is clear that, when the yacht found there was no response to its signal, its duty was to renew its signal and not leave the customary and safe passageway until it knew whether its sudden change of course was safe, or, to adopt the language of The New York, 175 U. S. 187, 20 S. Ct. 67, 72, 44 L. Ed. 126, "to stop until the mystery of her silence was explained." Instead of acting advisedly, the yacht chose to pass on the north side without any affirmative direction so to do.

In view of the fact that the opinion of Judge Clark so exhaustively discussed all phases of the case, and a reference thereto shows attention was paid to every question raised, we avoid needless repetition by reference thereto, and limit ourselves to affirming the decree he entered dismissing the libel.